UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 14-cr-224 (RHK/LIB) (1) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Tory Djuan Patterson, | |
| Defendant. | |

This matter came before the undersigned United States Magistrate Judge upon Defendant Tory Djuan Patterson's Motion to Suppress Search and Seizure, [Docket No. 27]. This case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a pretrial motions hearing on September 16, 2014, regarding the parties' pretrial discovery motions[1] and Defendant's Motion to Suppress Search and Seizure. For reasons discussed herein, the Court recommends **GRANTING** Defendant's Motion to Suppress Search and Seizure, [Docket No. 27].

I.   BACKGROUND

On or about July 9, 2014, Defendant Tory Djuan Patterson was charged with one count of possession of an unregistered short-barreled shotgun, in violation of 26 U.S.C. §§ 5841, 5845(a)(1) and (2), 5861(d), and 5871; and one count of felon in possession of firearm – armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Indictment [Docket No. 10]).

---

[1] The Court addressed the parties' pretrial discovery motions by separate Order, [Docket No. 31].

**II.   DEFENDANT'S MOTION TO SUPPRESS SEARCH AND SEIZURE, [DOCKET NO. 27]**

Defendant moves the Court for an order suppressing the April 16, 2014, search and seizure of evidence at Defendant's home, 1006 East 6th Street, Duluth, Minnesota. (See [Docket No. 27]). Defendant argues that the affidavit in support of the application for the search warrant obtained to conduct the search of the Defendant's home does not present facts sufficient to support a finding of probable cause. Defendant argues that the affidavit does not establish a sufficient nexus between the evidence expected to be discovered and Defendant's home.

**A.   Standard of Review**

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and that "no warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. Amend. IV. The Eighth Circuit has held that "[a]n affidavit for a search warrant need only show facts sufficient to support a finding of probable cause." United States v. Parker, 836 F.2d 1080, 1083 (8th Cir. 1987). Probable cause exists when "a practical, common-sense" evaluation of "all the circumstances set forth in the affidavit" demonstrates "a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" United States v. Colbert, 605 F.3d 573, 576 (8th Cir. 2010) (quoting Gates, 462 U.S. at 231). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (quoting United States v. Murphy, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, Gates, 462 U.S. at 238)).

As alluded to above, the sufficiency of a search warrant affidavit is examined using "common sense and not a hypertechnical approach." United States v. Grant, 490 F.3d 627, 632 (8th Cir. 2007) (citation and internal quotations omitted). "Therefore, '[w]hen the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, only that information which is found in the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Wiley, No. 09-cr-239 (JRT/FLN), 2009 WL 5033956, at *2 (D. Minn. Dec. 15, 2009) (Tunheim, J.) (quoting Solomon, 432 F.3d at 827; edits in Wiley). "In ruling on a motion to suppress, probable cause is determined based on 'the information before the issuing judicial officer.'" United States v. Smith, 581 F.3d 692, 694 (8th Cir. 2009) (quoting United States v. Reivich, 793 F.2d 957, 959 (8th Cir. 1986)). Nevertheless, "[a] magistrate's 'determination of probable cause should be paid great deference by reviewing courts,'" Gates, 462 U.S. at 236 (quoting Spinelli v. United States, 393 U.S. 410, 419 (1969)). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)).

**B.    Analysis**

On April 15, 2014, Border Patrol Agent Adrian Lorincz ("Agent Lorincz") drafted an affidavit in support of an application for a warrant to search the premises located at 1006 East 6th Street, Duluth, Minnesota, as well as, search the person of Barbara Nicole Gilliam. (Gov't Ex. 1). Identified items for which law enforcement intended to search included controlled substances (specifically heroin), other drug paraphernalia, and items commonly associated with selling controlled substances. (Id. at 1).

In his supporting affidavit, Agent Lorincz stated that he is a sworn law enforcement officer currently assigned to the Lake Superior Drug and Violent Crime Task Force. (Id. at 2, ¶ 1). Agent Lorincz detailed his relevant background, training, and experience in controlled substance investigations. (Id. at 2-3, ¶¶ 2-5). Agent Lorincz stated that since 2009, investigators with the Lake Superior Drug and Violent Crime Task Force had been receiving information that an individual identified as Barbara Nicole Gilliam had been selling controlled substances in Duluth, Minnesota. (Id. at 3, ¶ 6). In February and March 2009, investigators conducted at least three (3) controlled purchases of crack cocaine from Gilliam, and Gilliam was subsequently charged with and convicted of 3rd Degree Sale of a Narcotic and 5th Degree Possession of a Controlled Substance. (Id. at 3, ¶ 7). In October and November 2010, investigators again conducted at least three (3) controlled purchases of crack cocaine from Gilliam, and Gilliam received two additional felony convictions. (Id. at 3, ¶ 8).

Agent Lorincz stated that in September 2013, Confidential Witness #1 informed investigators with the Lake Superior Drug and Violent Crime Task Force that Gilliam had been selling heroin from 706 East 4th Street, Duluth. (Id. at 3, ¶ 9). Investigators executed a search warrant at the location; seized heroin, cash, and a loaded firearm; and arrested Gilliam for violating her probation/parole. (Id. at 3, ¶ 10). In January 2014, Confidential Reliable Informant #1[2] reported that Gilliam had been selling heroin in the Morgan Park area of Duluth, and Confidential Reliable Informant #2[3] reported that Gilliam had been selling heroin out of her Morgan Park *residence*. (Id. at 3, ¶¶ 11-12).

---

[2] The affidavit states that CRI #1 had conducted at least five (5) controlled purchases of controlled substances and had provided information that had led to the issuance of at least one search warrant and the arrest of at least two individuals. (Gov't Ex. 1 at 4, ¶ 19).

[3] The affidavit states that CRI #2 had conducted at least eight (8) controlled purchases of controlled substances and had provided information that had led to the issuance of at least three search warrants and the arrest of at least five people. (Gov't Ex. 1 at 4, ¶ 20).

In March 2014, Confidential Reliable Informant #3[4] reported that he had personally witnessed Gilliam selling heroin on at least ten separate occasions, and that at least four of the incidents had taken place in the area of 10th Avenue West and 6th Street in Duluth. (Id. at 3, ¶ 13). Within the 72 hours immediately preceding Agent Lorincz's application for the April 15, 2014, search warrant, CRI #3 reported witnessing Gilliam selling heroin in that same area of Duluth. (Id. at 4, ¶ 14). Also in the 72 hours immediately preceding application for the present search warrant, investigators witnessed Gilliam meet with various individuals on the sidewalks and streets near 10th Avenue West and 6th Street in Duluth, one of whom was a known drug dealer. (Id. at 4, ¶ 15). Agent Lorincz stated that at one point between the observed interactions with various individuals on the sidewalks and streets, investigators witnessed Gilliam go into and come out of the residence located at 1006 East 6th Street, Duluth, Minnesota. (Id.) Agent Lorincz stated in the supporting affidavit that he later determined that Gilliam's address of record was 1006 East 6th Street, Duluth, Minnesota, after reviewing "police records, property information, and other databases." (Id. at 4, ¶ 16).[5] Agent Lorincz also determined that Gilliam was, at the time of the application, on supervised release from the Minnesota Department of Corrections and that her address with the Minnesota Department of Correction was also listed as 1006 East 6th Street, Duluth, Minnesota. (Id. at 4, ¶ 17).[6]

Upon review of Agent Lorincz's affidavit, the Court finds that the issuing judge did *not* have a sufficient basis upon which to conclude that probable cause existed for the issuance of the April 15, 2014 search warrant.

---

[4] The affidavit states that CRI #3 had conducted at least six (6) controlled purchases of controlled substances and had provided information that had led to the issuance of at least two search warrants and the arrest of at least seven people. (Gov't Ex. 1 at 4, ¶ 21).

[5] The affidavit does not state what databases were reviewed, nor does it state how current or up to date the information in those databases was.

[6] See, fn. 5, supra.

To establish probable cause for the issuance of a search warrant, "there must be evidence of a nexus between the contraband and the place to be searched before a warrant may properly issue." United States v. Tellez, 217 F.3d 547, 550 (8th Cir. 2000) (citing United States v. Koelling, 992 F.2d 817, 823 (8th Cir. 1993)). "The requisite nexus between a particular location and contraband is determined by the nature of the crime and the reasonable, logical likelihood of finding useful evidence." United States v. Etheridge, 165 F.3d 655, 657 (8th Cir. 1999) (citing United States v. Christenson, 549 F.2d 53, 57 (8th Cir. 1977)).

The April 15, 2014, search warrant sought (1) Barbara Nicole Gilliam, and (2) evidence of her criminal activity at 1006 East 6th Street. Agent Lorincz's affidavit contains the following information regarding the location(s) of Gilliam's alleged criminal activity: in September 2013, Gilliam had been selling contraband from 706 East 4th Street; in January 2014, Gilliam had been selling contraband from and residing in a residence in Morgan Park; and in March 2014, and within 72 hours of the issuance of the April 15, 2014 search warrant, Gilliam had been selling contraband at the intersection of 10th Avenue West and 6th Street. However, at no point does the affidavit articulate *any* direct evidence that *any* illicit activity by Barbara Gilliam had taken place at or even *near* 1006 East 6th Street.

Rather, the affidavit only indirectly attempts to connect Gilliam and any evidence of her criminal activities to 1006 East 6th Street by stating (1) that law enforcement witnessed Gilliam entering and leaving the residence one time within 72 hours of the issuance of the search warrant, and (2) that the residence was Gilliam's "address of record." However, these factual allegations ultimately fail to create a sufficient nexus between Gilliam's alleged criminal activity and the residence at 1006 East 6th Street. First, the fact that Gilliam may have entered the residence at 1006 East 6th Street once "between sales" – which were allegedly occurring

approximately twenty blocks away – is far too attenuated to even suggest that evidence of a crime would be found in the residence at 1006 East 6th Street. Within 72 hours of the issuance of the warrant, the affidavit places Gilliam at the intersection of 10th Avenue West and 6th Street, allegedly selling contraband. At some point in the 72 hours – the warrant does not specify precisely when and simply identifies the incident as taking place "in between" meetings with individuals at 10th Avenue West and 6th Street – law enforcement witnessed Gilliam simply entering and leaving the residence at 1006 East 6th Street, twenty blocks away without any information to establish any sort of nexus between Gilliam's alleged illicit activity and this residence. It stretches credulity to conclude that Gilliam's single stop at a residence previously *entirely* unconnected to Gilliam and any alleged illicit activity or other evidence of a crime would be sufficient to establish probable cause to believe that law enforcement may find contraband or other evidence of a crime therein.

In contrast, the Court compares, for example, the facts in Tellez, in which the Eighth Circuit held that the discovery of drugs on the defendant, a known drug dealer, *shortly after leaving his home* in response to an order placed by a customer was sufficient to establish probable cause for a search of defendant's home. Tellez, 217 F.3d at 549. "In this case there was evidence that Mr. Tellez was engaged in a continuing course of criminal activity, and we believe that it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence related to his drug dealing in his home." Id. The same may not be said of the facts at hand. Nothing in the affidavit suggests that it may be reasonably inferred that Gilliam was keeping a supply of drugs or other evidence at 1006 East 6th Street.

Second, the fact that the affidavit generically identifies 1006 East 6th Street as Gilliam's "address of record" at the time the warrant issued means virtually nothing without additional

7

information regarding *when* Gilliam had listed the address as her address of record. The affidavit places Gilliam dealing contraband from 706 East 4th Street in September 2013, *living* and dealing from a residence in Morgan Park as recently as in January 2014, and dealing from the intersection of 10th Avenue West and 6th Street in March and April 2014. As late as only a few months prior to the issuance of the search warrant, Gilliam was *living* in Morgan Park. That the affidavit in support of the search warrant asserts that, in this context, Gilliam's "address of record" was reported to be 1006 East 6th Street without establishing when she may have lived there leaves the judge to whom the warrant application was presented to speculate as to whether or not the reference to 1006 East 6th Street as Gilliam's residence was based on stale information. Without additional facts indicating that Gilliam's *current* address at the time the warrant was sought was indeed 1006 East 6th Street, the affidavit's reference to Gilliam's "address of record" fails to create a sufficient nexus between the alleged contraband sought to be seized and 1006 East 6th Street.

The Court compares again in contrast the facts of an analogous yet easily distinguishable case, United States v. Garcia-Hernandez, 682 F.3d 767 (8th Cir. 2012) cert. denied, 133 S. Ct. 1608, 185 L. Ed. 2d 597 (U.S. 2013), to the case at hand. In Garcia-Hernandez, the defendant argued that the application to conduct a search of his residence did not establish a sufficient nexus between the alleged criminal activity and his residence to support a finding of probable cause. The affidavit in support of the warrant stated that vehicles belonging to the defendant were seen coming and going from residences associated with drug distribution, and cars of known drug dealers were seen coming and going from defendant's house:

> On multiple occasions video surveillance showed people carrying coolers into and out of Garcia-Hernandez's house and in vehicles registered to known drug dealers. The affidavit indicated that police had learned that coolers were often used to complete

> methamphetamine transactions. Cell phone records showed that during a period of less than one year more than 1,000 calls were made between numbers belonging to Garcia–Hernandez and numbers of known drug dealers. A confidential informant said that he had purchased methamphetamine at Garcia–Hernandez's residence on several occasions.

The Eighth Circuit ultimately held that the application demonstrated there was more than a "fair probability that law enforcement officers would discover further evidence of illegal drug activity" at the defendant's home. Id. 771-72. The Eighth Circuit recognized that the affidavit demonstrated and described a continuing pattern of behavior specifically associated directly with the defendant's residence. It may not be said that a similar "fair probability" was demonstrated in the present case.

The Court finds that the issuing judge did *not* have a sufficient basis upon which to conclude that probable cause existed for the issuance of the April 15, 2014, search warrant for 1006 East 6th Street.

However, the Government contends that "[u]nder the Leon good-faith exception, disputed evidence will be admitted if it was objectively reasonable for the officer executing a search warrant to have relied in good faith on the judge's determination that there was probable cause to issue the warrant." Grant, 490 F.3d at 632 (citing United States v. Leon, 468 U.S. 897, 922 (1984)).

"The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization. When assessing the objective reasonableness of police officers executing a warrant, we must look to the totality of the circumstances[.]" United States v. Perry, 531 F.3d 662, 665 (8th Cir. 2008) (quotations and internal citations omitted). "The Leon exception is inapplicable, however, when an officer relies on a warrant for which the supporting affidavit is

9

'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" United States v. Ross, 487 F.3d 1120, 1122 (8th Cir. 2007) (citations omitted). Under Leon, "absent allegations that the magistrate was not neutral, 'suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.'" United States v. Etheridge, 165 F.3d 655, 658 (8th Cir. 1999) (citing United States v. Fulgham, 143 F.3d 399, 401-02 (8th Cir. 1998), quoting Leon, 468 U.S. at 926, 104 S.Ct. 3405).

In the present case, on the content of the affidavit submitted in support of the application for the search warrant, the executing law enforcement officers – which included the affiant, Agent Lorincz – had no legitimate, objectively reasonable belief that heroin or other evidence of criminal activity by Barbara Gilliam would be recovered at 1006 East 6th Street. As articulated above, law enforcement had no evidence of any reasonable connection between Gilliam's criminal activity and the residence at 1006 East 6th Street. Accordingly, the Court declines to apply the Leon good faith exception.

### III.  CONCLUSION

For the foregoing reasons, and based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED:**

That Defendant's Motion to Suppress Search and Seizure, [Docket No. 27], be **GRANTED**.

Dated: September 26, 2014                                           s/Leo I. Brisbois
                                                                    Leo I. Brisbois
                                                                    U.S. MAGISTRATE JUDGE

**N O T I C E**

As the Court forewarned on the date of the pretrial motions hearing, in light of the pending trial date of November 3, 2014, the Court finds it must reduce the time during which the parties are allowed to file, and to respond to, objections to this Report and Recommendation.

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties **by October 8, 2014** a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by October 20, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.